---

| | | |
|---|---|---|
| CHRISTOPHER SADOWSKI | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-00334-KK-JHR |
| | ) | |
| CONSTRUCTION REPORTER | ) | |
| DIGITAL MAGAZINE, LLC | ) | |
| and | ) | |
| CONSTRUCTION REPORTER, LLC | ) | |
| | ) | |
| Defendants/Counterclaim Plaintiffs. | ) | |

**ANSWER AND COUNTERCLAIMS OF DEFENDANTS CONSTRUCTION REPORTER DIGITAL MAGAZINE, LLC AND CONSTRUCTION REPORTER, LLC**

Defendants Construction Reporter Digital Magazine, LLC ("Digital Magazine") and

Construction Reporter, LLC ("CR") (jointly referred to as "Defendants"), by their undersigned

counsel, here answer, assert affirmative defenses, and allege counterclaims in response to the

Complaint of Plaintiff Christopher Sadowski ("Mr. Sadowski"), as follows:

**ANSWER**

1.     Defendants are without knowledge or information sufficient to admit or deny the

allegations of this paragraph of Mr. Sadowski's Complaint, and so deny them and demand strict

proof thereof.

2.     Defendants admit the allegations of this paragraph of Mr. Sadowski's Complaint.

3.     Defendants admit the allegations of this paragraph of Mr. Sadowski's Complaint.

4.     Defendants admit the allegations of this paragraph of Mr. Sadowski's Complaint.

5.     Defendants admit the allegations of this paragraph of Mr. Sadowski's Complaint.

6. Defendants admit that venue is proper in this judicial district in the instant matter; but deny that venue is proper based only on their being subject to jurisdiction in this Court.

7. Defendants are without knowledge or information sufficient to admit or deny the allegations in this paragraph of Mr. Sadowski's Complaint, and so deny them and demand strict proof thereof.

8. Defendants are without knowledge or information sufficient to admit or deny the allegations in this paragraph of Mr. Sadowski's Complaint, and so deny them and demand strict proof thereof.

9. Defendants are without knowledge or information sufficient to admit or deny the allegations in this paragraph of Mr. Sadowski's Complaint, and so deny them and demand strict proof thereof.

10. Defendants are without knowledge or information sufficient to admit or deny the allegations in this paragraph of Mr. Sadowski's Complaint, and so deny them and demand strict proof thereof.

11. Defendants are without knowledge or information sufficient to admit or deny the allegations in this paragraph of Mr. Sadowski's Complaint, and so deny them and demand strict proof thereof.

12. Defendants are without knowledge or information sufficient to admit or deny the allegations in this paragraph of Mr. Sadowski's Complaint, and so deny them and demand strict proof thereof.

13. Defendants are without knowledge or information sufficient to admit or deny the allegations in this paragraph of Mr. Sadowski's Complaint, and so deny them and demand strict proof thereof.

14. Defendants are without knowledge or information sufficient to admit or deny the allegations in this paragraph of Mr. Sadowski's Complaint, and so deny them and demand strict proof thereof.

15. Defendants are without knowledge or information sufficient to admit or deny the allegations in this paragraph of Mr. Sadowski's Complaint, and so deny them and demand strict proof thereof.

16. Defendants deny the allegations of this paragraph of Mr. Sadowski's Complaint.

17. Defendants admit this is the mission of Construction Reporter; and that the mission of Digital Magazine is to offer a somewhat truncated version of the Reporter.

18. Defendants admit the allegations of this paragraph of Mr. Sadowski's Complaint.

19. Defendants deny the allegations of this paragraph of Mr. Sadowski's Complaint.

20. Defendants deny the allegations of this paragraph of Mr. Sadowski's Complaint.

21. Defendants admit the allegations of this paragraph of Mr. Sadowski's Complaint.

22. Defendants admit the allegations of this paragraph of Mr. Sadowski's Complaint.

23. Defendants deny the allegations of this paragraph of Mr. Sadowski's Complaint.

24. Defendants admit the allegations of this paragraph of Mr. Sadowski's Complaint.

25. Defendants admit the allegations of this paragraph of Mr. Sadowski's Complaint.

26. Defendants admit that an employee working for Digital Magazine found a copy of the photograph on the web; but deny the implication that anyone acting for either of them acted improperly in not contacting Mr. Sadowski, whose identity was not known to them.

27. Defendants are without knowledge or information sufficient to admit or deny the allegations of the first sentence of this paragraph of Mr. Sadowski's Complaint, and so deny them and demand strict proof thereof. Defendants admit the allegations of the second sentence

of this paragraph of Mr. Sadowski's Complaint. Defendants deny that Mr. Sadowski has attempted to negotiate a reasonable license for the alleged infringement about which he is complaining.

28.     Defendants are without knowledge or information sufficient to admit or deny the allegations in this paragraph of Mr. Sadowski's Complaint, and so deny them and demand strict proof thereof.

29.     Defendants reassert and incorporate herein by reference their responses to paragraphs 1 through 28 of Mr. Sadowski's Complaint.

30.     Defendants deny the allegations of this paragraph of Mr. Sadowski's Complaint.

31.     Defendants deny the allegations of this paragraph of Mr. Sadowski's Complaint.

32.     Defendants deny the allegations of this paragraph of Mr. Sadowski's Complaint.

33.     Defendants deny the allegations of this paragraph of Mr. Sadowski's Complaint.

34.     Defendants deny the allegations of this paragraph of Mr. Sadowski's Complaint.

35.     Defendants deny the allegations of this paragraph of Mr. Sadowski's Complaint, except to admit that his attorneys did make several attempts to communicate with them, which were not stonewalled, but to which Defendants responded when they came to believe that they should not ignore Mr. Sadowski's threats as a kind of scam.

36.     Defendants deny the allegations of this paragraph of Mr. Sadowski's Complaint, except that Defendants admit that they do believe, and partially understood as lay persons and not lawyers, that copyright protection and intellectual property are important.

37.     Defendants deny the allegations of this paragraph of Mr. Sadowski's Complaint.

38.     Defendants deny the allegations of this paragraph of Mr. Sadowski's Complaint.

39.     Defendants deny the allegations of this paragraph of Mr. Sadowski's Complaint.

40.  Defendants deny the allegations of this paragraph of Mr. Sadowski's Complaint.

41.  Defendants deny the allegations of this paragraph of Mr. Sadowski's Complaint.

42.  Defendants deny the allegations of this paragraph of Mr. Sadowski's Complaint.

## AFFIRMATIVE DEFENSES

As and for its Affirmative Defenses, Defendants assert the following:

1.  Mr. Sadowski's photograph that is the subject of his Complaint is not an original work of authorship and is not entitled to copyright protection.

2.  Mr. Sadowski's Complaint is barred by his own misuse of the copyright law of the United States.

3.  Mr. Sadowski's Complaint is barred by his unclean hands.

4.  Mr. Sadowski's Complaint is barred by his willful misconduct.

5.  Mr. Sadowski's Complaint is barred by his having impliedly consented to Defendants' use of the photograph.

6.  Mr. Sadowski's Complaint is barred by principles of waiver and estoppel.

7.  Mr. Sadowski's Complaint is barred by Defendants' fair use of the subject photograph.

## COUNTERCLAIMS

Defendants allege the following Counterclaims against Mr. Sadowski, as follows:

1.  Mr. Sadowski conducts the business of a copyright troll. Rather than, or in addition to, concentrating his business on the sale or licensing of photographs, he has chosen to engage in threats and litigation rather than the business of taking and selling photographs, as a source of income. On information and belief he has knowingly allowed his photographs to be available to the public on websites without providing notice that he claims to be the

photographer or copyright owner of those photographs, all done intentionally so as not to inform members of the public of his claim to such ownership; then monitors public access to those websites to identify persons who download those images; then engages in searches of the web to determine if those persons who have downloaded the subject images use them for any purpose; and upon learning of such uses, has lawyers contact the persons who have downloaded and used the images, who assert his claim to copyright ownership of the subject images and threaten to sue the persons unless they pay him an exorbitant amount that could fairly be characterized as extortionate, given the market value for such images.

2.      If persons so identified by Mr. Sadowski decline to pay him, he regularly files suit for copyright infringement against those persons in federal courts throughout the United States. On information and belief Mr. Sadowski has threatened hundreds of such persons with copyright infringement lawsuits over the past several years, most of whom have paid amounts far beyond the fair value of the use of those photographs simply to avoid the even greater likely costs of litigation; and has filed suit against individuals who decline to settle in those courts in at least 100 instances over the same time period.

3.      All the actions described above are a part of a scheme Mr. Sadowski and his lawyers have developed and pursue in order to lure individuals into downloading images of photographs in which he claims to own copyright; to then monitor access to those images to determine who has downloaded them and used them for any purpose that may be determined by access to the internet; and then threaten to sue and sue such persons for amounts that are legally unreasonable, excessive and extortionate, knowing that the costs of defense of such claims, whether or not they are valid, would considerably exceed the cost of tribute demanded by the photographer who has orchestrated the scheme.

4.      Sometime in 2020 a Digital Magazine employee downloaded a generic photograph of a Home Depot storefront he found on the web to use with an article about that company.  The website where the image was found did not identify a photographer or copyright proprietor of that image, and the employee believed Digital Magazine could lawfully reproduce that image in its digital publication.

5.      Defendants received a letter from Copycat Legal dated September 14, 2021 asserting that an unadorned photograph of the front façade of a Home Depot store appearing on Digital Magazine's publication along with an article about Home Depot had been taken by Mr. Sadowski and that he owned the copyright in that photograph.  The letter asserted that Defendants had 14 days to pay $30,000 for the infringement of Mr. Sadowski's copyright in that photograph, or face a lawsuit for infringement, in which he would seek damages of $150,000.  A draft complaint was attached to the letter.  A copy of the letter, with the draft complaint, is attached hereto as Exhibit A.

6.      On information and belief the letter sent to Defendants attached hereto contains an identical demand as set forth in form letters Mr. Sadowski has sent to numerous targets of his scheme, excepting only that the particular photographs such others were alleged to have infringed were different.  On information and belief, in these cases the photograph in question had typically been found by the targeted party on a website that provided no information or indication that the photograph had been taken by, or the copyright was owned by, Mr. Sadowski.  On information and belief Mr. Sadowski has long been aware that his photographs were available on websites that did not identify him as the owner or copyright proprietor of the images in question; and for years he took no action to notify the hosts of the websites that the images were his and should be removed; and he knew and intended that having these photographs

available on those websites might induce innocent users to download his photographs.

7.      Acting in accordance with his business model as described above, Mr. Sadowski directed his lawyers to threaten and if necessary pursue a claim for copyright infringement against such persons unless they paid an extortionate amount to compensate Mr. Sadowski for the alleged infringement.  In all these actions Mr. Sadowski acted knowingly and willfully, with legal malice, to implement a scheme to misuse the copyright law and illegally extort money from the targets of his scheme, including Defendants.

8.      In all their actions described above, Defendants were unaware of any claim by Mr. Sadowski that copyright in the subject image was owned by Mr. Sadowski; and had no reasonable way of knowing so.  Upon receiving the letter from Mr. Sadowski's lawyers and then coming to believe that his letter was not entirely a scam, Defendants took steps to investigate the legitimacy of Mr. Sadowski's claim, but did not agree to meet Mr. Sandowski's extortionate demand.

9.      In furtherance of his scheme to improperly and unlawfully extort money from those who innocently download unidentified images of his photographs, Mr. Sadowski filed the instant lawsuit against Defendants.

10.     In all these actions Mr. Sadowski acted knowingly and willfully, with legal malice, to implement a scheme to misuse the copyright law and illegally extort money from the targets of his scheme., including Defendants.

**COUNT I**
**(Declaratory Judgment under 28 U.S.C. § 2201 <u>et</u> <u>seq.</u>)**

11.     Defendants reallege and incorporates herein by reference the allegations in paragraphs 1 through 10 above.

12.     There exists an actual controversy between the Parties as to whether Mr. Sadowski, by his conduct described herein, has been and is misusing protection provided by the U.S. Copyright Act to owners of creative works of authorship in filing his lawsuit against Defendants.

13.     For the reasons set forth above, Mr. Sadowski has misused and is further threatening to misuse any copyright he owns in the image that is the subject of his claim against Defendants, and Defendants is entitled to a declaratory judgment that Harrington's conduct precludes his claim for copyright infringement against Defendants.

**COUNT II**
**(Violation of New Mexico Unfair Practices Act, 1978 NMSA § 57-12-1 et seq.)**

14.     Defendants reallege and incorporate herein by reference the allegations in paragraphs 1 through 13 above.

15.     By his actions described above, Mr. Sadowski has acted knowingly and willfully, as part of his regular course of business conduct prior to and in connection with his dealings with Defendants, sought to lure Defendants and others into unwittingly committing entirely innocent violations of the Copyright Act, and to sue such persons, and in doing so falsely represent to the public that he is acting in good faith in legitimate pursuit of his rights, all in a way that is injurious to the targets of his misconduct, such as Defendants herein, and the myriad of other members of the consuming public who have been and in the future may be entrapped by his calculated misuse of the copyright laws.  All this is injurious to the public and fair competition with respect to other photographers who do not engage in such misuse of their copyrights and their customers.

16.     By these actions described above Mr. Sadowski has damaged Defendants and threatens to further damage Defendants and others, in violation of the New Mexico Unfair

Practices Act, and Defendants is entitled to recover three times its actual damages and to receive an award of attorney's fees it reasonably incurs in securing relief it is seeking.

## COUNT III
### (Prima Facie Tort)

17.     Defendants reallege and incorporate herein by reference the allegations in paragraphs 1 through 16 above.

18.     By intentionally committing the actions described herein of asserting ownership of copyright in his photographic image and suing for infringement, Mr. Sadowski engaged in conduct that would be legal, had he not done so after having knowingly and intentionally lured Defendants into downloading and reproducing the subject image as part of his business model, but here for the improper purpose of attempting to exact extortionate payment from Defendants.

19.     By his actions described above Mr. Sadowski's conduct was for the purpose of and has had the effect of causing damage to Defendants, and Defendants is accordingly entitled to recover damages for prima facie tort, in an amount to be determined at trial.

## RELIEF REQUESTED

Based on the facts alleged above, Defendants requests the Court enter judgment in its favor, as follows:

1.     ORDER that Mr. Sadowski's claims be denied and that his complaint be dismissed with prejudice.

2.     ORDER that Mr. Sadowski be permanently enjoined from threatening to sue or suing Defendants for copyright infringement with respect to images Mr. Sadowski allows to be publicly available without identifying the fact that such images are subject to copyright protection or that he is the copyright owner of the image, acting pursuant to his business model by which he attempts to lure innocent persons to download and use such images.

3.      ORDER Mr. Sadowski to pay Defendants damages in an amount to be proven at trial.

4.      ORDER Mr. Sadowski to pay Defendants damages in an amount three times its actual damages.

5.      ORDER Mr. Sadowski to pay Defendants punitive damages for Harrington's knowing, willful and malicious action in violation of Defendants rights.

6.      ORDER Mr. Sadowski to pay Defendants the attorney's fees it reasonably incurs in seeking relief in this matter.

7.      ORDER Mr. Sadowski to pay Defendants the costs they incur allowable by law.

8.      ORDER  Mr. Sadowski to pay Defendants post-judgment interest on all amounts awarded to it, at the statutory rate.

9.      ORDER such further relief as the Court deems just and proper.

## JURY DEMAND

Defendants demand trial by jury on all claims asserted herein for which trial by jury is allowed.

Respectfully submitted,
By:  /s/ Jeffrey L. Squires
PEACOCK LAW P.C.
Jeffrey L. Squires
NM Bar No.  143015
201 Third St. NW, Suite 1340
Albuquerque, NM  87102
Tel:  (505) 998-6116
Fax:  (505) 243-2542
*Attorneys for Defendant*

*G:\\A-Clients\Contruction Reporter, LLC\PROPOSED\LIT\Answer and Counterclaim of Defendant Construction Reporter Digital Magazine, LLC and Construction Reporter, LLC.pdf*



Copycat Legal PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065

T   877-HERO-CAT (877-437-6228)
E   help@copycatlegal.com

FRE 408 SETTLEMENT COMMUNICATION

September 14, 2021

**VIA FEDERAL EXPRESS AND ELECTRONIC MAIL** (askme@constructionreporter.com)

Construction Reporter Digital Magazine LLC
Sarah Motsinger, Steve Adams and Joshua Cutler, Principals
4901 McLeod Rd NE, #200A
Albuquerque, New Mexico  87109

*RE:*   *Christopher Sadowski v. Construction Reporter Digital Magazine LLC*

Dear Ms. Motsinger and Messrs. Adams and Cutler:

This law firm represents Christopher Sadowski.  I am writing to you because it appears that one or more of our client's copyrighted works was utilized for commercial purposes by Construction Reporter Digital Magazine LLC d/b/a Construction Reporter, without first obtaining or purchasing a license from our client. Such unauthorized use constitutes federal copyright infringement under 17 U.S.C. § 501 in addition to other claims potentially arising under federal and/or state law. This letter is sent pursuant to Federal Rule of Civil Procedure 408 and is for settlement purposes only. This letter is an attempt to amicably resolve the dispute specified herein prior to initiation of litigation in which damages, costs, and attorneys' fees will be sought. To the extent we cannot resolve this matter privately, please see the enclosed draft Complaint that we intend to file in the United States District Court for the District of New Mexico.

Mr. Sadowki is an award-winning photojournalist and is widely published in some of the world's most important newspapers and magazines, including but not limited to, Boston Globe, Boston Herald, Los Angeles Times, Newsweek Magazine, People Magazine, The Daily Mail Online and the New York Post. Using state-of-the-art equipment, Mr. Sadowski creates high-end photography licensed by some of the top publishers in this country. When commissioned for a job, our client spends countless hours capturing dozens (if not hundreds) of photographs and then processing those photographs to ensure they meet customers' requirements. The unauthorized use of Mr. Sadowski's work deprives him of much-needed income and forces our client to incur substantial costs (monetary and time) in identifying violators and enforcing his rights.

In 2017, our client took a professional photograph of the Home Depot located in Patterson, NJ. To our knowledge, our client *did not* authorize you or your company to use and/or display the foregoing photograph. Notwithstanding this lack of authorization, we have identified the subject photograph appearing twice on the Construction Reporter's digital edition of the Construction Reporter's Magazine. More specifically, the photograph appears in the September 2020, Volume No. 01, Issue No. 08 on Page 11 and 20, on the https://www.constructionreporter.com/ website. Screenshots of the photograph(s), together with our client's federally registered copyright information, are attached to and described more fully in the attached draft Complaint.

I encourage you to discuss the foregoing with your attorney and/or your insurance carrier as copyright infringement is a serious matter that potentially exposes you to substantial damages/attorneys' fees if we are forced to file the enclosed lawsuit. Keep in mind that attorneys' fees include those you will be forced to incur to mount a defense (if any) *and* potentially the attorneys' fees/costs we will incur to pursue the matter (which may be awarded) if our client prevails in court. It is important that you are cognizant of that exposure in deciding how to respond to this letter. Assuming our client prevails in court, 17 U.S.C. § 504(c)(1) provides our client the right to recover statutory damages (for *each work* that was infringed) "in a sum of not less than $750 or more than $30,000 as the court considers just." Further, if the infringement was committed "willfully," the court may increase the award of statutory damages (for *each work* that was infringed) "to a sum of not more than $150,000."

Courts in the Tenth Circuit (which covers New Mexico, Colorado, Utah, and Wyoming) have not hesitated (where appropriate) to impose substantial statutory damages against copyright infringers. See, e.g. Shive v. J&C Baseball Clubhouse, Inc., No. CIV 15-0406 JB/JHR, 2018 U.S. Dist. LEXIS 36475, at *2 (D.N.M. Mar. 5, 2018) (adopting jury award of $150,000.00 for infringement of single photograph).

Please note that Section 504 of the Copyright Act provides for the recovery of statutory damages (as explained above) or (at our client's election) actual damages plus "any additional profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." Of course, if forced to litigate this matter, we will fully explore the damages issue and make an election that is most beneficial to our client.

While this is a serious matter, it is not particularly complex. The utilization of our client's work(s) without proper authorization constitutes copyright infringement, and we will either resolve this issue in court (allowing a court to decide the matter) or privately between the parties. To that end, my client's demand is simple – you shall pay ***Thirty Thousand Dollars ($30,000.00)*** within **fourteen (14) days of the date first written above** and shall immediately cease and desist from any further use of our client's work(s). Please contact us within the above-stated period to arrange for payment. If payment is received as described above, we will forego the filing of a lawsuit. Otherwise, please be aware that our client does not shy away from enforcing his rights in court. He has previously filed over 130 lawsuits for copyright infringement and will not hesitate from filing again if this matter cannot be amicably resolved.

Corson v. Gregory Charles Interiors, LLC, No. 9:19-cv-81445, 2020 U.S. Dist. LEXIS 142932, at *5-7 (S.D. Fla. Aug. 7, 2020) is instructive with respect to your evaluation of the foregoing settlement demand. I encourage you to read the below-quoted text from that case:

> Corson believes that the scarcity of this work should also be considered in this Court's evaluation. Corson employed several techniques that she perfected over her career including: "professional strobe lighting to give the photos a polished, yet natural look. Most images were shot on a tripod with custom lighting setups that [Corson's] years of experience shooting homes and interiors has allowed [her] to execute with precision and speed. Selecting the proper lenses and aligning the camera properly is crucial to high-end architectural photography." ECF No. [12-2] at 3. Cors~ "then spent 2 working days processing the approximately 4C^ ,tc graphs using [her] proprietary adjustments to color, contr..ct, levels, etc.; selected [her] favorites; made individual adjustments to those 92 files; then submitted them along with dozens of video clips to [her] editor." *Id.* *The Court finds Corson's request for a scarcity multiplier of four is appropriate to reflect the fair market value of Corson's Work. See Affordable Aerial Photography, Inc. v. VisitWPB.Com, Inc., No. 17-CV-81306-BB, 2018 U.S. Dist. LEXIS 227389, 2018 WL 6519104, at *2 (S.D. Fla. April 23, 2018) (J. Bloom) (applying a scarcity multiplier of six to an infringed work of photography)*; Leonard v. Stemtech Int'l, Inc., 834 F.3d 376, 394 (3d Cir. 2016) (affirming a jury verdict of $1.6 million where the sum included a multiplier of three to five times the benchmark because of the scarcity factor of a stem cell image). Therefore, Corson's actual damages are $19,200.00 (the licensing fee over two years times a scarcity multiplier of four).
>
> Corson seeks statutory damages as a result of GCI's willful infringement upon the Work. Willful infringement occurs when the Defendant acts "with 'actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's copyright.'" *Arista Records, Inc. v. Beker Enterprises, Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (J. Cohn) (citing *Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc.*, 658 F. Supp. 458, 464 (E.D.Pa.1987)). Here, Corson sent GCI two notices of its infringement prior to the date this suit was filed. Corson's notice letters, dated April 29, 2019 and June 14, 2019, received no response from GCI. Further, GCI received notice of its infringement when it was served the Complaint in this action. [*7] ECF No. [1]. *Notwithstanding prior instances of notice, "this Court may infer that Defendant willfully infringed Plaintiffs' copyrights because of Defendants' default." Arista Records, Inc.*, 298 F. Supp. 2d at 1313 (internal citations omitted). I

find that GCI's infringing conduct was willful. ***Accordingly, Corson is entitled to a tripling of her actual damages of $19,200.00 See Affordable Aerial Photography, Inc., 2018 U.S. Dist. LEXIS 227389, 2018 WL 6519104, at \*2 (finding Defendant's willful infringement entitled the Plaintiff to a trebling of its actual damages)***; *Major Bob Music v. Stubbs*, 851 F. Supp. 475, 481 (S.D. Ga. 1994) (plaintiffs' request of statutory damages of an amount approximately three times what the defendant would have paid to be licensed "is a modest, just and appropriate award under section 504(c)(1)"). ***I thus recommended awarding Corson $57,600.00 in statutory damages.***

As stated above, the facts and circumstances of each case are different. However, using <u>Corson</u> as an example, please keep in mind that our client would have licensed this photograph for an ***annual fee of $1,500.00***. It appears that the photograph was first published on Construction Reporter's Magazine on or about September 2, 2020. This edition of Construction Reporter's Magazine has been present on its website from at least September 2, 2020. This would result in unpaid licensing fees of $3,000 ($1,500.00 for 2020 and $1,500.00 for 2021). Given the unique nature of our client's work, we believe a scarcity multiplier of 4x – 6x is appropriate, resulting in actual damages of $12,000.00 - $18,000.00. If the infringement is found to be willful, those actual damages would then be trebled to $36,000.00 - $54,000.00 (without taking into account any award of costs or prevailing party attorneys' fees). Please also keep in mind the above figures are exclusive of any award of damages for removal of our client's copyright management information from the subject photograph(s).

Further, you should provide a copy of this letter to your general liability insurance carrier (if one exists), notify them of our client's demand, disclose the identity of such insurer to us, and provide a copy of the subject insurance policy to us. If you believe we are mistaken as to the allegations of copyright infringement made herein, then we encourage you to provide us with copies of any license or other evidence supporting your authorized use of the subject work(s).

This letter is not intended as one in a series of threatening letters on this subject. Rather, we demand that you respond affirmatively and immediately. If we do not receive such from you or otherwise hear from you to arrange payment, we will file the enclosed lawsuit and allow the courts to decide the matter.

Finally, while removing the unlicensed photograph(s) from commercial display is required, please understand that ***removal alone is insufficient to end this matter***. If you do not contact us to arrange for payment for your existing/past use of the photograph(s), a lawsuit ***will*** be filed and our client ***will*** pursue the above-described damages against you.

You should give this matter your immediate attention.

Very truly yours,

Daniel DeSouza, Esq.
Shareholder -- For the Firm

Very truly yours,

James D'Loughy, Esq.
Shareholder -- For the Firm

Encl.

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

Case No. _____

CHRISTOPHER SADOWSKI,

     Plaintiff,

v.

CONSTRUCTION REPORTER DIGITAL MAGAZINE LLC,
d/b/a CONSTRUCTION REPORTER,
CONSTRUCTION REPORTER, LLC,
SARAH MOTSINGER, STEVE ADAMS,
and JOSHUA CUTLER,

     Defendants.

_____

## COMPLAINT

Plaintiff Christopher Sadowski ("Plaintiff") sues defendants Construction Reporter Digital Magazine LLC, d/b/a Construction Reporter ("Construction Reporter Digital Magazine"), Construction Reporter LLC,[1] Sarah Motsinger ("Motsinger"), Steve Adams ("Adams"), and Joshua Cutler ("Cutler") (collectively, the "Defendants"), and alleges as follows:

## THE PARTIES

1.     Plaintiff is an individual who is a citizen of the State of New Jersey, who is residing in the State of New Jersey.

2.     Construction Reporter Digital Magazine is a limited liability company organized and existing under the laws of the State of New Mexico with its principal place of business located at 4901 McLeod Rd NE, #200A, Albuquerque, New Mexico 87109. Construction Reporter Digital Magazine's agent for service of process is United States Corporation Agents, Inc., 4801 Lang

---

[1] Construction Reporter Digital Magazine and Construction Reporter LLC are collectively referred to herein as "Construction Reporter."

Avenue NE, Suite 110, Albuquerque, New Mexico 87109.

3.    Construction Reporter LLC is a limited liability company organized and existing under the laws of the State of New Mexico with its principal place of business located at 4901 McLeod Rd NE, #200A, Albuquerque, New Mexico 87109. Construction Reporter LLC's agent for service of process is Gary D. Eisenberg, 4801 Lang Avenue NE, Suite 110, Albuquerque, New Mexico 87109.

4.    Motsinger is an individual who is a citizen of the State of New Mexico, residing at 3705 Piermont Drive NE, Albuquerque, New Mexico 87111.

5.    Adams is an individual who is a citizen of the State of New Mexico, residing at 3705 Piermont Drive NE, Albuquerque, New Mexico 87111.

6.    Cutler is an individual who is a citizen of the State of New Mexico, residing at 9600 Benton Street, NW, Albuquerque, New Mexico 87114.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.    This Court has personal jurisdiction over Defendants because they have maintained sufficient minimum contacts with New Mexico such that the exercise of personal jurisdiction over them would not offend traditional notions of fair play and substantial justice.

9.    Venue properly lies in this district pursuant to 28 U.S.C. § 1400(a) because Defendants or their agents reside or may be found in this district. "Under section 1400(a), a defendant may be 'found' in any judicial district where he is subject to personal jurisdiction." Chalfant v. Tubb, 453 F. Supp. 2d 1308, 1316 (N.D. Okla. 2006) In other words, if a "Defendant is subject to personal jurisdiction in [the forum state], this is also a proper venue for the action."

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

Relaximals, Inc. v. Brentwood Originals, Inc., Civil Action No. 19-cv-02721-MEH, 2020 U.S.

Dist. LEXIS 55783, at *6 (D. Colo. Mar. 31, 2020)

## FACTS

**I.     Plaintiff's Business and History**

10.     Plaintiff is an award-winning photo journalist and is widely published in some of

the world's most important newspapers and magazines, including but not limited to, Boston

Globe, Boston Herald, Los Angeles Times, Newsweek Magazine, People Magazine, The Daily

Mail Online and the New York Post.

11.     For the past fifteen (15) years, Plaintiff has been self-employed as a high-end

photographer who specializes in photo-documenting ordinary life and the human condition.

12.     Plaintiff travels throughout the New York, New Jersey and Connecticut tri-state

area taking photographs that tell a story about tragedy, hope, calamity, joy, discord and renewal.

13.     Using state-of-the-art equipment, Plaintiff creates high-end photography licensed

by some of the top publishers in this County. When commissioned for a job, Plaintiff spends

countless hours capturing dozens (if not hundreds) of photographs and then processing those

photographs to ensure they meet customers' requirements.

14.     Plaintiff maintains a commercial website (http://www.csnyphoto.com) which

describes the photography services offered by Plaintiff, hosts a sample portfolio of photographs

taken by Plaintiff, and invites prospective customers to contact Plaintiff to arrange for a

professional photo shoot.

15.     Plaintiff owns the photographs and serves as the licensing agent with respect to

licensing such photographs for limited use by Plaintiff's customers. To that end, Plaintiff's

standard terms include a limited, one-time license for use of any particular photograph by the

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

customer only. Plaintiff's license terms make clear that all copyright ownership remains with Plaintiff and that its customers are not permitted to transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity.

## II.     The Work at Issue in this Lawsuit

16.    In 2017, Plaintiff created a professional photograph (titled "012517homedepot 14CS, 5/19/2017") (the "Work") depicting the exterior of a Home Depot located in Patterson, New Jersey:



17.    The Work was registered by Plaintiff with the Register of Copyrights on July 30, 2017 and was assigned Registration No. VA 2-056-827. A true and correct copy of the Certification of Registration pertaining to the Work is attached hereto as **Exhibit "A."**

18.    Plaintiff is the owner of the Work and has remained the owner at all times material hereto.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

### III. Defendants' Unlawful Activities

19.     Construction Reporter, among other services and products it sells, creates, publishes, and distributes through its website (https://www.constructionreporter.com/) (hereinafter the "Website"), a digital magazine for profit, known as *Construction Reporter* (hereinafter the "Magazine").

20.     Motsinger's father, Frank Cronican, founded Construction Reporter in 1949 to "help contractors find and organize bid information." Motsinger grew upon working with Construction Reporter until acquiring ownership of Construction Reporter on or about January 1, 2021, together with her husband, Adams, and business partner, Cutler.

21.     The Magazine generally consists of paid ads, classifieds, and construction industry articles and is marketed and sold (through subscription membership model) to contractors, suppliers, architects, engineers, and project owners.

22.     Motsinger, Adams, and Cutler are the sole members and owners of Construction Reporter. Motsinger, Adams, and Cutler have exclusive control over the business activities of Construction Reporter, including but not limited to the infringing activities that are the subject of this lawsuit.

23.     On a date after Plaintiff's above-referenced copyright registration of the Work, Defendants caused the Work to be published in the Magazine that was subsequently published on the Website:

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

volume_1_issue_8.pdf - Adobe Acrobat Reader DC (32-bit)

File   Edit   View   Sign   Window   Help

Home      Tools          volume_1_issue_8.p... ×

20  / 96          74.3%

? Sign In



Export PDF

Adobe Export PDF
Convert PDF Files to Word
or Excel Online

Select PDF File
volume_1_issue_8.pdf          ×

Convert to
Microsoft Word (*.docx)   ∨

Document Language:
English (U.S.)  Change

Convert, edit and e-sign PDF
forms & agreements

24. A true and correct copy of the Magazine, displaying the copyrighted Work, is attached hereto as Exhibit "B."

25. Defendants are not and have never been licensed to use or display the Work. Defendants never contacted Plaintiff to seek permission to use the Work in connection with their Magazine or Website or for any other purpose.

26. Defendants utilized the Work for commercial use – namely, in connection with the marketing and advertising of Construction Reporter's services, membership and Magazine.

27. Upon information and belief, Defendants located a copy of the Work on the internet and, rather than contact Plaintiff to secure a license, simply copied the Work for their own commercial use.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

28.     Through his ongoing diligent efforts to identify unauthorized use of its photographs, Plaintiff discovered Defendants' unauthorized use/display of the Work in September 2021. Following Plaintiff's discovery, Plaintiff notified Defendants in writing of such unauthorized use. To date, however, Defendants have not responded to Plaintiff, thus necessitating the filing of this lawsuit to protect Plaintiff's rights with respect to the Work.

29.     All conditions precedent to this action have been performed or have been waived.

## COUNT I – COPYRIGHT INFRINGEMENT
### (Construction Reporter)

30.     Plaintiff re-alleges and incorporates paragraphs 1 through 29 as set forth above.

31.     The Work is an original work of authorship, embodying copyrightable subject matter, that is subject to the full protection of the United States copyright laws (17 U.S.C. § 101 *et seq.*).

32.     Plaintiff owns a valid copyright in the Work, having registered the Work with the Register of Copyrights and owning sufficient rights, title, and interest to such copyright to afford Plaintiff standing to bring this lawsuit and assert the claim(s) herein.

33.     As a result of Plaintiff's reproduction, distribution, and public display of the Work, Construction Reporter had access to the Work prior to its own reproduction, distribution, and public        display        of        the        Work        on        its        own Website and Magazine.

34.     Construction Reporter reproduced, distributed, and publicly displayed the Work without authorization from Plaintiff.

35.     By its actions, Construction Reporter infringed and violated Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501, by reproducing, distributing, and publicly displaying the Work for its own commercial purposes.

7

36.     Construction Reporter's infringement was willful as it acted with actual knowledge or reckless disregard for whether its conduct infringed upon Plaintiff's copyright. Defendants, all being in the business of publishing a magazine and producing digital marketing content, clearly understand that photography cannot simply be copied from the internet and used to sell magazines without paying just compensation.

37.     In fact, Construction Reporter's Website publishes copyright management information to protect its own work, "Copyright © 2020, Construction Reporter." Construction Reporter understands the legal requirements to comply with copyright law—especially in that it knows better than to infringe upon Plaintiff's Work.

38.     Plaintiff has been damaged as a direct and proximate result of Construction Reporter's infringement.

39.     Plaintiff is entitled to recover his actual damages resulting from Construction Reporter's unauthorized use of the Work and, at Plaintiff's election (pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to recover damages based on a disgorgement of Construction Reporter's profits from infringement of the Work, which amounts shall be proven at trial.

40.     Alternatively, and at Plaintiff's election, Plaintiff is entitled to statutory damages pursuant to 17 U.S.C. § 504(c), in such amount as deemed proper by the Court.

41.     Pursuant to 17 U.S.C. § 505, Plaintiff is further entitled to recover his costs and attorneys' fees as a result of Construction Reporter's conduct.

42.     Construction Reporter's conduct has caused and any continued infringing conduct will continue to cause irreparable injury to Plaintiff unless enjoined by the Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive rights under copyright law.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

**WHEREFORE**, Plaintiff demands judgment against Construction Reporter as follows:

a. A declaration that Construction Reporter has infringed Plaintiff's copyrights in the Work;

b. A declaration that such infringement is willful;

c. An award of actual damages and disgorgement of profits as the Court deems proper or, at Plaintiff's election, an award of statutory damages for willful infringement up to $150,000.00 for each infringement of the Work;

d. Awarding Plaintiff his costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505;

e. Awarding Plaintiff interest, including prejudgment interest, on the foregoing amounts;

f. Permanently enjoining Construction Reporter, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Construction Reporter, from directly or indirectly infringing Plaintiff's copyrights or continuing to display, transfer, advertise, reproduce, or otherwise market any works derived or copied from the Work or to participate or assist in any such activity; and

g. For such other relief as the Court deems just and proper.

## COUNT II – VICARIOUS COPYRIGHT INFRINGEMENT
### (Motsinger, Adams, and Cutler)

43. Plaintiff re-alleges and incorporates paragraphs 1 through 29 as set forth above.

44. As evidenced above, Construction Reporter infringed and violated Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501, by reproducing, distributing, publicly displaying the Work for its own commercial purposes.

45. As the members and sole owners of Construction Reporter, Motsinger, Adams, and Cutler have the right and ability to control the infringing acts of Construction Reporter, yet declined or failed to stop Construction Reporter from engaging in its infringing activity – indeed,

9

Motsinger, Adams, and Cutler are the individuals who caused the infringement to occur.

46.     Motsinger, Adams, and Cutler obtained a direct financial benefit from Construction Reporter's infringing activities. As the members and sole owners of Construction Reporter, Motsinger, Adams, and Cutler receive profit distributions therefrom and, upon information and belief, pay themselves a salary therefrom.

47.     As a direct and proximate result of Motsinger, Adams, and Cutler's vicarious copyright infringement, Plaintiff has been damaged. "Vicarious liability attaches when the defendant has the right and ability to supervise the infringing activity and has a direct financial interest in such activities. A defendant may be vicariously liable even when he or she is not aware of the infringing activity." Diversey v. Schmidly, 738 F.3d 1196, 1204 (10th Cir. 2013). See also LaTele TV C.A. v. Telemundo Commc'ns Grp., LLC, No. 12-22539-CIV-ROSENBAUM, 2013 U.S. Dist. LEXIS 43488, at *32 (S.D. Fla. Mar. 26, 2013) ("[P]leading facts sufficient to pierce the corporate veil is not required in order to state a cause of action for vicarious copyright infringement.").

WHEREFORE, Plaintiff demands judgment against Motsinger, Adams, and Cutler as follows:

   a.   An award of actual damages and disgorgement of profits as the Court deems proper or, at Plaintiff's election, an award of statutory damages for willful infringement up to $150,000.00 for each infringement of the Work;

   b.   Awarding Plaintiff his costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 1203(b)(5);

   c.   Awarding Plaintiff interest, including prejudgment interest, on the foregoing amounts;

   d.   Permanently enjoining Motsinger, Adams, and Cutler, their employees, agents, officers,

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Motsinger, Adams, and Cutler, from directly or indirectly further violating Plaintiff's copyrights by further displaying or distributing the Work with its copyright management information removed; and

e. For such other relief as the Court deems just and proper.

## Demand For Jury Trial

Plaintiff demands a trial by jury on all issued so triable.

Dated: _____.

COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
dan@copycatlegal.com
james@copycatlegal.com

By: /s/ Daniel DeSouza, Esq.
      Daniel DeSouza, Esq.
      Florida Bar No.: 19291
      James D. Loughy, Esq.
      Florida Bar No.: 0052700

EXHIBIT "A"

# Certificate of Registration



This C~~~~~cate issued under the seal of the Copyright
Offi..~ ~ cor~lance with title 17, *United States Code,*
attests u.. ~ registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*[signature]*

Acting United States Register of Copyrights and Director

**Registration Number**

## VA 2-056-827

**Effective Date of Registration:**
June 30, 2017

## Title

**Title of Work:** Group Registration Photos, 2017-Q2 Photo Collection, published 4/1/2017 to 6/30/2017; 117 photos

**Content Title:** 112516crimescene33CS, 4/1/2017

012617stabbing4CS, 4/2/2017; 022517crime3CS, 4/2/2017

022517crime2CS, 4/2/2017

022317debt3CS, 4/3/2017

010917ocean1CS, 4/3/2017

061705whitemanna1CS, 4/5/2017

031517townhall14CS, 4/6/2017

040817pedestrian4CS, 4/8/2017

040817shooting2CS, 4/9/2017; 040817shooting4CS, 4/9/2017

052716faulkner31CS, 4/9/2017

040817police1CS, 4/12/2017

010817ferry6CS, 4/12/2017

090216garcia5CS, 4/12/2017

041317accident4CS, 4/13/2017

031517police1CS, 4/14/2017

041417response10CS, 4/14/2017

041417pursuit2CS, 4/15/2017

110616trump3CS, 4/18/2017

042017tolley15CS, 4/20/2017; 042017tolley20CS, 4/20/2017; 042017tolley25CS, 4/20/2017

041917ikea7CS, 4/21/2017; 041917ikea10CS, 4/21/2017

042117amtrak8CS, 4/21/2017

042217pedestrian2CS, 4/23/2017

060316crime5CS, 4/24/2017

041917renovation3CS, 4/25/2017

011117cruise9CS, 4/25/2017

081916court18CS, 4/25/2017

042717stabbing2CS, 4/28/2017

042717intrepid5CS, 4/28/2017

052116amazon6CS, 4/28/2017

050416train7CS, 5/2/2017

011917mcdonalds3CS, 5/2/2017

050517standoff3CS, 5/5/2017

041915crime1CS, 5/6/2017

050517crimescene1CS, 5/6/2017

050517standoff7CS, 5/6/2017

050617stabbing2CS, 5/7/2017

050617stabbing3CS, 5/7/2017

050517crimescene7CS, 5/8/2017

080416crosswalk2CS, 5/10/2017

050617schoolbus11CS, 5/10/2017

052116amazon29CS, 5/10/2017

072316nypd1CS, 5/10/2017

042217nypd1CS, 5/11/2017

051117fire4CS, 5/11/2017

051117robinson1CS, 5/11/2017

010817wtc2CS, 5/12/2017

050717money9CS, 5/12/2017

051017trooper3CS, 5/14/2017

041516overcrowding15CS, 5/15/2017

052716faulkner39CS, 5/15/2017

110210fall12CS, 5/15/2017



052716faulkner33CS, 5/16/2017

062216macys5CS, 5/16/2017

100916burgerking11CS, 5/16/2017

042217nypd2CS, 5/17/2017

012517homedepot14CS, 5/19/2017

050417walgreens4CS, 5/19/2017

052417ups6CS, 5/26/2017

050717money4CS, 5/26/2017

020117nyc10CS, 5/26/2017

122816bnp1CS, 5/26/2017

052617mailbox12CS, 5/26/2017

090408school3CS, 5/26/2017

053117printing2CS, 5/31/2017

083116iheartradio2CS, 6/2/2017

052617mailbox17CS, 6/2/2017

060217deblasio3CS, 6/5/2017

060517dollartree8CS, 6/8/2017

052016tesla17CS, 6/8/2017

052717snap7CS, 6/8/2017

060817lopezrivera9CS, 6/9/2017

060817lopezrivera24CS, 6/9/2017

022517uber1CS, 6/9/2017

051817train2CS, 6/9/2017

060817lopezrivera19CS, 6/10/2017

060817lopezrivera23CS, 6/10/2017; 060817lopezrivera35CS, 6/10/2017

052617mailbox2CS, 6/11/2017

050317applebees3CS, 6/12/2017

011217flags2CS, 6/12/2017

061117nordstrom2CS, 6/13/2017

110515timelife3CS, 6/13/2017

052617mailbox16CS, 6/14/2017

060517electricity11CS, 6/14/2017

061017aldi6CS, 6/14/2017

060217cityhall7CS, 6/14/2017

061017sears11CS, 6/14/2017

061417accident1CS, 6/15/2017; 061417accident8CS, 6/15/2017

082511hurricane19CS, 6/16/2017

061717protesters17CS, 6/17/2017

061717protesters7CS, 6/17/2017

120916nypd1CS, 6/17/2017

050416train14CS, 6/19/2017

061917spinner7CS, 6/19/2017

061614shore3CS, 6/20/2017

022517uber4CS, 6/20/2017

062217shooting2CS, 6/23/2017

062217staples9CS, 6/23/2017

062317billboard2CS, 6/23/2017

091416tappanzee8CS, 6/23/2017

062317billboard3CS, 6/24/2017

060217cityhall1CS, 6/24/2017

062517spinner1CS, 6/27/2017

120916nypd6CS, 6/27/2017

062517sprint3CS, 6/28/2017

050317walmart3CS, 6/28/2017

062317subway3CS, 6/28/2017

063017accident6CS, 6/30/2017; 063017accident7CS, 6/30/2017

062817uber4CS, 6/30/2017

050617sweeper2CS, 6/30/2017



## Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 2017 |
| **Date of 1st Publication:** | April 01, 2017 |

Nation of 1st Publication:  United States

## Author _____

- **Author:** Christopher Sadowski
  **Author Created:** photograph
  **Work made for hire:** No
  **Citizen of:** United States
  **Year Born:** 1982

## Copyright Claimant _____

**Copyright Claimant:** Christopher Sadowski
96 9th Avenue, Hawthorne, NJ, 07506, United States

## Rights and Permissions _____

**Name:** Christopher Sadowski
**Email:** cdsadowski@aol.com
**Telephone:** (973)650-5382
**Address:** 96 9th Avenue
Hawthorne, NJ 07506 United States

## Certification _____

**Name:** Christopher Sadowski
**Date:** June 30, 2017

EXHIBIT "B"

# CONSTRUCTION
## REPORTER

*NEW MEXICO'S*
*PREMIER CONSTRUCTION & BUILDING INDUSTRY*
*MAGAZINE*

# NEW REPORT SHOWS INCREASE IN SMALL CONSTRUCTION FIRM EMPLOYMENT

## EXCLUSIVE ARTICLE

*Santa Fe Breaks Into Top 10 In Construction Job Growth Among Metros*

*Read more on page 26>*

## THE 5 MOST EXPENSIVE FOOTBALL STADIUMS

*Find out on page 34>*

## FEATURED COMPANY

*AI SPACE FACTORY*
*ADVANCED CONSTRUCTION TECHNOLOGY FOR EARTH AND SPACE*



### WHERE'S WALDO?

*Find Waldo for a DEAL on a new magazine subscription!*
*Learn more on page 2>*

**URGENT ACTION ALERT:** THE FEDERAL HIGHWAY AND TRANSIT PROGRAMS SHUT DOWN IN 21 DAYS UNLESS CONGRESS AND PRESIDENT TRUMP TAKE ACTION. TELL THEM TO ACT BEFORE SEPTEMBER 30 TO AVOID THE POTENTIAL LOSS OF HUNDREDS OF THOUSANDS OF CONSTRUCTION JOBS AND THE DELAY OR CANCELLATION OF TRANSPORTATION PROJECTS!

**SEPTEMBER 2020**
**VOLUME NO. 01**
**ISSUE NO. 08**

SEE FULL ALERT ON PAGE 45 >

Continue reading featured story on page 15>



**CONSTRUCTIONREPORTER**

HOME

WHAT'S IN THE NEWS

CONSTRUCTION BUSINESS TRENDS

FEATURED PROJECTS

PROJECTS/PERMITS

AFFILIATES

COVID-19



Copyright: Dearborn.org

# THRIVING IN A COVID ECONOMY, HOME DEPOT'S SALES BOOM

*By Gary Boulard - Construction Reporter*
*9/2/2020*

Analysts are predicting a bright 2021 for the construction product and home improvement retailer Home Depot.

Those predictions follow release of the Atlanta-based company's second quarter earnings, which saw an unprecedented 24% increase over the same period of time last year.

Those numbers are even more impressive given that company's quarterly sales increases for the last decades have typically ranged between 5 and 10%.

Company officials say a sudden boom in home upgrade and repair projects during the Covid-19 economic shutdown is the primary generator behind Home Depot's strong numbers.

But it was also noted that least 45% of its sales came through materials and equipment purchased by contractors, electricians, and plumbers.

The company has additionally shown strong online sales. Those sales in the second quarter were up by exactly 100% over early 2019.

Such numbers have prompted analysts to predict a strong late 2020 stock performance for the company, while the Bank of America is forecasting a 15% increase in Home Depot's shares over the next year.

In a statement, Craig Menear, Home Depot chief executive officer, would only say, "We are cautious to extrapolate trends from the first half of the year into a forecast for the remaining of the year, particularly given the tremendous amount of uncertainty we face with regards to the duration and continued impacts of the virus."

Home Depot currently has just under 2,000 outlets. Last month the company announced it was building three new distribution centers, all of which will go up in Georgia.

2020 Construction Reporter, LLC, All Rights Reserved. Reproduction & Forwarding is Prohibited.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

CHRISTOPHER SADOWSKI            )
                                         )

      Plaintiff/Counterclaim Defendant     )

v.                                               )             Case No.  1:22-cv-00334-KK-JHR

CONSTRUCTION REPORTER     )
   DIGITAL MAGAZINE, LLC       )
             and                           )
CONSTRUCTION REPORTER, LLC    )

    Defendants/Counterclaim Plaintiffs.    )

**CERTIFICATE OF SERVICE FOR ANSWER AND COUNTERCLAIMS OF
DEFENDANTS CONSTRUCTIONS REPORTER DIGITAL MAGAZINE, LLC AND
CONSTRUCTION REPORTER, LLC**

I hereby certify that on this 6th day of June, 2022, a true and correct copy of the foregoing

Answer and Counterclaims of Defendants Construction Reporter Digital Magazine, LLC and

Construction Reporter LLC, along with this certificate of service, were sent via email to the

following counsel of record:

Daniel DeSouza
James D'Loughy
COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL  33065
Telephone: (877) 437-6228
Email:  dan@copycatlegal.com
            james@copycatlegal.com
*Attorneys for Plaintiff*

*/s/ Jeffrey L. Squires*