IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

Case No. 1:22-cv-00334-KK-JHR

CHRISTOPHER SADOWSKI,

    Plaintiff,

v.

CONSTRUCTION REPORTER DIGITAL
MAGAZINE LLC, and CONSTRUCTION
REPORTER LLC,

    Defendants.

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL DISCOVERY[1]

Plaintiff/counter-defendant Christopher Sadowski ("Plaintiff") hereby files this memorandum in opposition to defendant/counter-plaintiffs Construction Reporter Digital Magazine LLC and Construction Reporter LLC's (collectively, the "Defendants") Motion to Extend Deadline for Filing Motion to Compel and to Compel Discovery (the "Motion") [D.E. 25], and states as follows:

### INTRODUCTION

As a threshold matter, the Motion is not timely as it was filed long after the deadline for filing a motion under the Local Rules. But even if the Court was inclined to consider the Motion (despite the "must" language of the Local Rules), the Motion paints with too broad a brush. Here,

---

[1] The Motion was filed on January 17, 2023. Plaintiff's response thereto was therefore due on or before January 31, 2023. On February 2, 2023, Defendant's counsel (Jeffrey Squires) e-mailed undersigned counsel to inquire about the status of Plaintiff's response to the Motion. Unfortunately, undersigned counsel had mis-calendared the deadline to respond as February 4, 2023 and was not aware that the deadline was actually January 17, 2023 until Mr. Squires had reached out. It is unclear how the deadline was mis-calendared. For his part, Mr. Squires indicated that he does not consent to the filing of this memorandum after the deadline for doing so.

the Motion seeks to compel Plaintiff to respond to Interrogatory Nos. 4 and 13 and Document Request Nos. 1, 6, 10, 14, and 15 and essentially argues that, because the Court found such discovery to be relevant with respect to a different plaintiff (Blaine Harrington III), the Court should do the same here. The Motion ignores, of course, that Defendant's allegations against Plaintiff are even more tenuous than those against Mr. Harrington and that the *only* common connection between the two cases is Mr. Squires.

## ARGUMENT

**I. The Motion is Untimely**

As the Court knows, Local Rule 26.6 requires that:

> A party served with objections to:
>
> - an interrogatory;
> - request for production or inspection; or
> - request for admission
>
> must proceed under D.N.M.LR-Civ. 37.1 within twenty-one (21) days of service of an objection unless the response specifies that documents will be produced or inspection allowed. In this case, the party must proceed under D.N.M.LR-Civ. 37.1 within twenty-one (21) days after production or inspection of the documents.
>
> Failure to proceed within this time period constitutes acceptance of the objection. For good cause, the Court may, sua sponte or on motion by a party, change the twenty-one (21) day period.

D.N.M. LR-Civ. 26.6; see also <u>Keller v. Arrieta</u>, No. 20-259 KG/SCY, 2022 U.S. Dist. LEXIS 166635, at *6 (D.N.M. Sep. 15, 2022) (finding motion to compel untimely when not filed within the 21-day period required by Local Rule 26.6 and that party did not demonstrate good cause to excuse itself from deadline).

Here, there is no dispute that the Motion is untimely. Plaintiff served his responses to the

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

subject discovery requests on September 12, 2022. As described in the Motion, the 21-day deadline within Local Rule 26.6 had already expired by the time Mr. Squires sought undersigned counsel's consent to an extension of time to file a motion to compel. That motion (which undersigned counsel agreed to) was filed on October 7, 2022 and sought an extension until 10 days after the Court ruled on the motion to compel in the 360 ABQ matter. As the Court knows, the Memorandum Opinion and Order at issue was entered in the 360 ABQ case *on November 17, 2022*. The Motion was filed on January 17, 2023 – *61 days later*. As set forth in the Motion, Mr. Squires did not even reach out to undersigned counsel until December 30, 2022 (*43 days* after the 360 ABQ Order was issued).

Respectfully, Defendant has not demonstrated good cause for its failure to comply with the Local Rules or the terms of the consent motion that was itself filed out-of-time. The notion that an Order entered in a different case, with respect to completely different parties, would somehow have preclusive effect on Plaintiff's objections in this case strains credulity. Further, that counsel was distracted by other pending motions likewise offers no excuse for ignoring both the Local Rules and the terms of the consent motion that itself extended deadlines that Defendant failed to initially comply with. While it is true that the deadlines could be extended without otherwise modifying the Scheduling Order, that does not give Defendant a free pass to ignore deadlines or somehow constitute excusable neglect.

## II.     Interrogatory Nos. 4 and 13

Interrogatory No. 4 requests Plaintiff to disclose the total percentage of his earned income derived from pursuing copyright infringers while Interrogatory No. 13 seeks disclosure of the settlement amounts received/costs incurred by Plaintiff in the copyright infringement lawsuits that Plaintiff has filed. Neither interrogatory is proper or has any relevance to Defendant's copyright

misuse counterclaim/affirmative defenses.

As set forth in the Complaint, Plaintiff is a an award-winning photo journalist and is widely published in some of the world's most important newspapers and magazines, including but not limited to, Boston Globe, Boston Herald, Los Angeles Times, Newsweek Magazine, People Magazine, The Daily Mail Online and the New York Post. This lawsuit concerns a single photograph of a Home Depot storefront that was created for/published by the New York Post in a May 16, 2017 article titled "Home Depot bucks sluggish retail trends" (available at: https://nypost.com/2017/05/16/home-depot-bucks-sluggish-retail-trends/):





The article credits Plaintiff as the author of the photograph.

As the Court knows, Defendant has filed a counterclaim and various affirmative defenses on the basis that Plaintiff is a "copyright troll." Specifically, Defendant alleges: (1) Plaintiff "knowingly allowed his photographs to be available to the public on websites without providing notice that he claims to be the photographer or copyright owner;"[2] (2) Plaintiff engages in web searches to identify infringers;[3] (3) Plaintiff retains lawyers to "threaten to sue the persons unless they pay him an exorbitant amount that could fairly be characterized as extortionate;"[4] and (4) Plaintiff has developed a "scheme… in order to lure individuals into downloading images of photographs in which he claims to own copyright."[5] These are the **SAME** allegations that the defendant in 360 ABQ made with respect to Mr. Harrington and are likewise made with the same rampant speculation that has caused a motion to disqualify Mr. Squires in yet another case involving Mr. Harrington (Adler Medical v. Harrington). It has become crystal clear in discovery that none of Mr. Squires' clients has *any* personal knowledge concerning such allegations and that they are relying exclusively on Mr. Squires' purported knowledge.

And while Mr. Squires has at least litigated prior cases against Mr. Harrington, he has never litigated a single other case against Plaintiff (thus raising serious questions as to the factual basis for the claims asserted herein). Here, Defendant is alleging that Plaintiff puts his photographs on websites without attribution to himself… yet the only authorized publication of the photograph clearly identifies Plaintiff as the author. The Court should now recognize the allegations of the Counterclaim for what they are… fanciful in nature and the creation of an attorney rather than his

---

[2] See Counterclaim [D.E. 5], at ¶ 1.
[3] Id.
[4] Id.
[5] Id. at ¶ 3.

client. While discovery is broad, it does not exist to serve the whims of fanciful creations without any evidentiary basis… and that is precisely the scenario before the Court.

Plaintiff's responses to Interrogatory Nos. 4 and 13 is that documents pertaining to Plaintiff's gross revenues from pursuing infringers and/or specific settlement amounts of copyright infringement lawsuits has no relevance to the claims or defenses at issue in this lawsuit. Indeed, whether 5%, 25%, or 100% of Plaintiff's income is derived from pursuing copyright infringers has no bearing on whether Plaintiff is "knowingly" allowing his photographs to be published without attribution or "luring" individuals into downloading his photographs – i.e., the crux of Defendant's 'copyright troll' claims/defenses. The same is true with respect to specific settlements. If Plaintiff settled with Defendant A for $5,000.00 and with Defendant B for $100,000.00, those facts have no bearing on Defendant's actual allegations, claims, or defenses. Indeed, if Plaintiff settled 500 cases over the prior 5 years – each for $1.00 or each for $1 million – that has ***nothing*** to do with the factual assertions actually raised in this lawsuit.

The Motion is noticeably quiet on why Plaintiff's history of settlements with infringers is somehow relevant to the claims/defenses at issue in this lawsuit. It is not. If anything, Defendant's counsel (Jeffrey Squires, Esq.) appears to have developed a niche practice of representing copyright infringers in New Mexico, asserting the same canned/contrived counterclaims irrespective of the plaintiff, and is now seeking to pry into each and every one of Plaintiff's settlements for his own benefit rather than any issue material to this lawsuit.

Plaintiff submits that the Court should follow Home Design Servs. v. B&B Custom Homes, LLC, Civil Action No. 06-cv-00249-WYD-GJR, 2008 U.S. Dist. LEXIS 55980 (D. Colo. May 30, 2008) in light of the wholesale lack of evidence supporting Defendant's allegations. In Home Design Servs., a home designer sued numerous defendants for alleged copyright infringement.

The defendants in that case "requested a ruling regarding the discoverability of information related to revenue Plaintiff receives from litigation in other copyright cases throughout the country, including amounts received from any verdicts, judgments, court decrees, and settlement agreements." Id. at * 6. The defendants argued that such evidence was relevant to their affirmative defense of copyright misuse. The court in Home Design Servs. analyzed the doctrine of copyright misuse *in the 10th Circuit* and found that evidence of settlements in other cases or percentage of revenue constituting settlements in infringement actions had *no relevance* to the misuse doctrine:

> The fact that the Plaintiff has been successful in protecting copyrighted designs and has generated revenue through litigation would not appear to pertain to the elements of the defense of copyright misuse. The fact that the Plaintiff has litigated claims under the federal Copyright Act and has been successful in that litigation fact does not indicate to this Court that the Plaintiff has engaged in copyright misuse. The Defendants must establish that the Plaintiff extended its purported monopoly beyond the scope of the copyright. I find that litigation revenue of the Plaintiff in other cases around the country does not tend to show that the Plaintiff illegally extended its monopoly beyond the scope of the copyright laws. I find that the information sought by Defendants with regard to Plaintiff's litigation revenue from around the country is unlikely to lead to the discovery of admissible evidence regarding the Defendants' affirmative defense of copyright misuse, based on an extension of a purported monopoly.
>
> Nor does the fact that the Plaintiff has recovered more in litigation revenue than the cost of the plans tend to show that the Plaintiff has violated the public policy underlying copyright law.
>
> HN5 Section 504(b) of the Copyright Act protects the copyright holder by allowing the copy right holder to recover not only the actual damages but also any of the infringer's profits. As the Plaintiff states in its brief, damages are awarded to compensate the copyright owner for losses from the infringement and profits are awarded to prevent the infringer from unfairly benefiting from a wrongful act. Section 504(b) is punitive in nature because it is designed to deter copyright infringement. Damages are awarded to compensate the copyright owner for losses from the infringement, and profits are awarded to prevent the infringer from unfairly benefitting from a wrongful act.

> Even if revenue from litigation exceeds the cost of the plans, there is nothing in this fact that would tend to show that the Plaintiff has acted in violation of the public policies underlying copyright law. I find that litigation revenue is not reasonably calculated to lead to the discovery of information tending to show that the Plaintiff has violated the public policies underlying copyright law. I consequently find that the information sought by the Defendants with regard to the Plaintiff's litigation revenue from cases brought around the country is unlikely to lead to the discovery of admissible evidence in support of the Defendants' copyright misuse defense based on violation of public policy.

Home Design Servs., 2008 U.S. Dist. LEXIS 55980, at *13-15.

Notably, the court in Home Design Servs. did allow the defendants to make limited inquiry into the plaintiff's general litigation revenue – but not because such was relevant to the copyright misuse doctrine. Rather, the court allowed such limited inquiry as potentially bearing on the credibility of various of the plaintiff's corporate officer witnesses who might have some pecuniary interest in the lawsuit. As a result, the court allowed discovery of how much those particular witnesses have individually made as a result of litigation revenue. ***In this case***, Plaintiff is an individual and has identified only himself (in his initial disclosures) as a witness with respect to his claims. There are no corporate officers/employees who may be biased. Given the above, the Court should sustain Plaintiff's objections to Interrogatory Nos. 4 and 13.

## III. Request Nos. 1, 6, 10, 14, 15, 16, 19

Request for Production Nos. 1 and 10 seek production of demand letters and/or takedown notices sent by Plaintiff to alleged infringers of his work. The remainder of the Requests for Production at issue (6, 14, 15, 16, and 19) seek production of documents evidencing Plaintiff's litigation/settlement revenue from pursuit of copyright infringers. With respect to Plaintiff's litigation/settlement revenue, the above discussion regarding the Interrogatories is equally applicable here. Whether sought in the form of an interrogatory or a request for production,

information concerning Plaintiff's revenue from pursuit of infringers has no bearing on the actual allegations in this lawsuit or to the copyright misuse doctrine as applied in the 10th Circuit.

Request Nos. 1 and 10 are likewise not relevant to the claims/defenses at issue in this lawsuit. The fact that Plaintiff has sent demand letters to other parties who infringed his copyrights has no relevance to whether Plaintiff extended the monopoly provided by the Copyright Act or somehow committed a personal tort against Defendant. Again, Defendant's actual allegation is that Plaintiff "knowingly" allows his photographs to be published on sites without attribution to him and "lures" individuals into downloading his photographs from those sites. Plaintiff's demand letters/takedown notices have no relevance to Defendant's allegations.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order: (a) denying the Motion and (b) for such further relief as the Court deems proper.

Dated: February 3, 2023.

COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
dan@copycatlegal.com

By: /s/ Daniel DeSouza
    Daniel DeSouza, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

/s/ Daniel DeSouza
Daniel DeSouza, Esq.